IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| COMPLETE MERCHANT SOLUTIONS, LLC, d.b.a, NEXIO, a Utah limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>SCOTT DAVIS, an individual, SARVEN CANIK, an individual, RAFFI KAYSERIAN, an individual, SRS CORPORATION, a California corporation, SECURE BC, LLC, d.b.a SECURE BANCARD, a Delaware limited liability company, and DOES I-X.<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT SRS CORPORATION'S MOTION TO DISMISS**<br><br>Case No. 2:24-cv-00789-RJS-DAO<br><br>Chief District Judge Robert J. Shelby<br><br>Magistrate Judge Daphne A. Oberg |

Now before the court are Defendant SRS Corporation's (SRS) Motion to Dismiss[1] and related Motion to Stay.[2]  For the reasons explained below, the court GRANTS SRS's Motion to Dismiss and DENIES SRS's Motion to Stay as moot.[3]

---

[1] Dkt. 35, *Defendant Raffi Kayserian's and SRS Corporation's Motion to Dismiss* (*Motion to Dismiss*).  Because this court stayed the case as to Defendant Raffi Kayserian, *see* Dkt. 32, *Order Granting Motion to Stay Defendant Raffi Kayserian*, the court only considers the Motion to Dismiss as to Defendant SRS.

[2] Dkt. 24, *Motion to Compel Arbitration and Stay Litigation* (*Motion to Stay*).

[3] Pursuant to DUCivR 7-1(g), the court finds oral argument is not necessary for this motion and will decide it on the papers.

## BACKGROUND

The court takes the following facts from Plaintiff Complete Merchant Solution LLC's (Nexio) Complaint[4] and related declarations and exhibits. At the motion to dismiss stage, the court accepts as true Nexio's well-pleaded factual allegations as true and views them in the light most favorable to Nexio.[5]

On October 18, 2024, Nexio filed this suit against SRS and four other defendants.[6] Nexio is a leading provider of global, tech-enabled payment routing and processing solutions.[7] Nexio sells its products and services primarily through its sales representative employees, who contact potential merchant customers and obtain signed customer contracts for Nexio's products and services.[8]

Defendants Scott Davis and Sarven Canik were formerly employed by Nexio as sales representatives.[9] Davis was employed from January 2012 until October 2024.[10] Canik was employed from September 2012 until June 2019.[11] Defendant Raffi Kayserian was formerly an independent contractor for Nexio, who first engaged with Nexio in March 2016.[12] Davis, Canik, and Kayserian entered into contracts with Nexio containing non-disclosure agreements, among

---

[4] Dkt. 2, *Complaint and Jury Demand* (*Complaint*).

[5] *See, e.g.*, *Beedle v. Wilson*, 422 F.3d 1059, 1063 (10th Cir. 2005).

[6] *Complaint*.

[7] *Id.* ¶ 13.

[8] *Id.* ¶ 14.

[9] *Id.* ¶¶ 19, 28; *see also* Dkt. 2-1, *Davis Employment Contract*; Dkt. 2-2, *Canik Employment Contract*.

[10] *Complaint* ¶¶ 19, 27.

[11] *Id.* ¶¶ 28–29.

[12] *Id.* ¶ 31.

other provisions.[13] During their tenures with Nexio, Davis, Canik, and Kayserian were privy to Nexio's confidential information and trade secrets, including client lists and pricing schemes.[14]

On January 1, 2021, Kayserian incorporated SRS, which Nexio alleges stands for "Scott," "Raffi," and "Sarven," the first names of Davis, Kayserian, and Canik.[15] SRS is a California corporation with its principal place of business in Los Angeles County, California.[16] Kayserian, SRS's registered agent and sole shareholder, is a resident of California.[17] Later, in September 2024, Nexio discovered that Davis, Canik, and Kayserian had been allegedly diverting Nexio customers to SRS and to Secure Bancard, one of Nexio's direct competitors.[18]

Nexio named SRS in five causes of action: aiding and abetting the breach of duty of loyalty; tortiously interfering with contractual relations; tortiously interfering with prospective economic advantage; and violations of the Defend Trade Secrets Act (DTSA) and the Utah Uniform Trade Secrets Act (UTSA).[19] Presently before the court is SRS's Motion to Dismiss under Rules 12(b)(1), (2), (3), and (6), in addition to their related Motion to Stay.[20] These motions are fully briefed and ripe for review.[21]

---

[13] *See Davis Employment Contract* (containing non-competition, non-disparagement, and non-solicitation agreements); *Canik Employment Contract* (containing non-competition, non-disparagement, and non-solicitation agreements); Dkt. 2-3, *Kayserian Referral Agreement* (containing non-disparagement and exclusivity agreements).

[14] *Complaint* ¶¶ 44–45.

[15] *Id.* ¶¶ 51–52.

[16] *Id.* ¶ 5.

[17] *Id.* ¶¶ 4, 51; Dkt. 35-1, *Declaration of Raffi Kayserian in support of Rule 12(b) Motion to Dismiss* (*Kayserian Declaration*) ¶¶ 3, 13.

[18] *Complaint* ¶¶ 41, 51, 53.

[19] *Id.* ¶¶ 95–136.

[20] *Motion to Dismiss*; *Motion to Stay*.

[21] *Motion to Dismiss*; Dkt. 41, *Memorandum in Opposition to Defendants Raffi Kayserian's and SRS Corporation's Motion to Dismiss* (*Opposition*); Dkt. 50, *Defendant SRS Corporation's Reply in Support of Motion to Dismiss* (*Reply*); *Motion to Stay*; Dkt. 34, *Memorandum in Opposition to Motion to Stay and Compel Arbitration as to Defendant SRS Corporation*; Dkt. 44, *Defendant SRS Corporation's Reply Memorandum in Support of Motion to Compel Arbitration and Stay Litigation*.

**LEGAL STANDARD**

A plaintiff opposing a Rule 12(b)(2) motion to dismiss bears the burden to establish the exercise of jurisdiction comports with the long-arm statute of the forum state and constitutional due process.[22] Because Utah's long-arm statute extends the jurisdictional reach of Utah courts to non-residents to the fullest extent permitted by the U.S. Constitution,[23] the traditional two-step jurisdictional analysis effectively collapses into the constitutional due process inquiry.[24] And it is well-established the Due Process Clause "protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations."[25] Thus, for a court to have specific personal jurisdiction[26] over a nonresident defendant, a plaintiff must show there are minimum contacts between the defendant and the forum state.[27]

Minimum contacts exist if the defendant has purposefully directed his activities at residents of the forum state, and the alleged injuries arise out of or are related to those activities.[28] A defendant's activities are "purposefully directed" at residents of the forum state if (1) defendant has continuing relationships with the forum state; (2) defendant deliberately exploited the forum state market; or, (3) defendant's actions caused harmful effects in the forum state (the Harmful Effects Test).[29] Under the Harmful Effects Test, the court must find the

---

[22] *Doe v. Nat'l Med. Servs.*, 974 F.2d 143, 145 (10th Cir. 1992).

[23] *Pohl, Inc. of Am. v. Webelhuth*, 201 P.3d 944, 950–51 (Utah 2008) (quoting Utah Code § 78B-3-201(3)).

[24] *See Rusakiewicz v. Lowe*, 556 F.3d 1095, 1100 (10th Cir. 2009).

[25] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985).

[26] Nexio does not argue that this court has general personal jurisdiction over SRS.

[27] *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980).

[28] *Burger King Corp.*, 471 U.S. at 472.

[29] *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 904 (10th Cir. 2017).

defendant engaged in intentional action expressly aimed at the forum state with knowledge that the brunt of the injury would be felt there.[30]

Even where a plaintiff establishes minimum contacts, the exercise of jurisdiction over a non-resident defendant must still comport with traditional notions of fair play and substantial justice.[31] To this end, courts will consider "the burden on the defendant," "the forum State's interest in adjudicating the dispute," "the plaintiff's interest in obtaining convenient and effective relief," "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and the "shared interest of the several States in furthering fundamental substantive social policies."[32]

## ANALYSIS

SRS seeks dismissal from this case for lack of personal jurisdiction.[33] Nexio argues the exercise of personal jurisdiction is proper because SRS's agent had a contractual relationship with Nexio—a Utah-based company—and caused injury to it. Alternatively, Nexio argues this court should either order jurisdictional discovery or defer a ruling on personal jurisdiction until trial because whether personal jurisdiction is proper in this case is intertwined with the merits of the case. The court finds that the exercise of jurisdiction is improper and that no discovery or deferred decision on the issue is warranted. Nexio has not shown SRS has suit-specific contacts with Utah, precluding this court's exercise of specific personal jurisdiction. And Nexio's basis for its request for jurisdictional discovery or a deferred ruling would fail to remedy its factual deficiencies.

---

[30] *Dudnikov*, 514 F.3d 1063 at 1072.

[31] *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945).

[32] *Woodson,* 444 U.S. 286, 292 (1980).

[33] *Motion to Dismiss*.

5

Additionally, Nexio does not explain why hailing SRS into a Utah court would be consistent with fair play and substantial justice. Because the court finds Nexio does not have personal jurisdiction over SRS, the court need not take up SRS's other Rule 12 challenges.

I. **Nexio Failed to Show SRS Has Minimum Contacts with Utah.**

Nexio argues Utah's long arm statute captures SRS's relationship to the forum state because SRS was responsible for "the causing of any injury within the state."[34] But to establish personal jurisdiction, Nexio must demonstrate that SRS purposefully directed activities at residents of Utah and that its alleged injuries arose out of SRS's Utah-related activities.[35] Purposeful direction is ultimately satisfied if SRS engaged in intentional action expressly aimed at Utah with knowledge that the brunt of the injury would be felt there.[36]

Nexio does not offer any specific facts purporting to show SRS or its agents expressly aimed any intentional action at the forum state, nor does it allege that any of the merchants that SRS allegedly diverted away from Nexio were based in Utah. Nexio does not allege that SRS or its agents were in Utah while allegedly misappropriating trade secrets, nor that they enlisted any Utah-based actor to participate in the scheme.

Still, Nexio insists specific personal jurisdiction exists over SRS[37] by relying on *Vivint, Incorporated v. Alert Holdings Group, Incorporated*.[38] In that case, an *out-of-state* corporation's agent contacted one of plaintiff's *in-state* employees and directed them to engage in unlawful conduct.[39] The court determined the agent's contact with the in-state employee was a forum-

---

[34] *Opposition* at 8–9 (citing Utah Code Ann. § 78B–3–205).

[35] *Burger King Corp.*, 471 U.S. at 472.

[36] *Dudnikov*, 514 F.3d 1072.

[37] *Opposition* at 9–10.

[38] No. 2:19-CV-215, 2019 WL 5637591 (D. Utah Oct. 31, 2019).

[39] *Id.* at *3.

specific contact giving rise to the dispute, which ultimately led the court to exercise personal jurisdiction over the out-of-state entity.[40]

Here, Nexio does not allege SRS—or any of its agents—contacted or enlisted any in-state individual to harm Nexio.  There was no "agent in Utah perform[ing] its dirty work," like in *Vivint*.[41]  In essence, the only link between SRS and Utah is Nexio itself.  And it is-well established that to satisfy minimum contacts, a defendant cannot solely be connected to the forum state via the plaintiff; rather, the defendant must independently have contacts in the forum state related to the alleged misconduct.[42]  Accordingly, Nexio did not offer sufficient facts showing this court can exercise specific personal jurisdiction over SRS.  And importantly, even if the court found that SRS had expressly aimed intentional activity at Utah-residents, Nexio failed to address any of the fairness concerns raised by SRS.[43]  Nexio bears the burden to establish that the exercise of jurisdiction is consistent with due process,[44] and the court cannot conclude that Nexio has met its burden.

## II. Nexio Fails to Provide a Valid Basis to Justify Jurisdictional Discovery or Defer a Decision on Personal Jurisdiction until Trial.

Nexio also asks this court to order jurisdictional discovery or, in the alternative, to defer deciding on personal jurisdiction until trial because the jurisdictional question is intertwined with the merits of the case.[45]  Indeed, "[w]hen a defendant moves to dismiss for lack of jurisdiction,

---

[40] *Id.*

[41] *Id.*

[42] *Walden v. Fiore*, 571 U.S. 277, 285 (2014).

[43] *Motion* at 10; *Reply* at 2.

[44] *Nat'l Med. Servs.*, 974 F.2d at 145.

[45] *Opposition* at 12–13.

either party should be allowed discovery on the factual issues raised by that motion."[46] And "[a]lthough courts have discretion when ruling on discovery requests, a court abuses that discretion when it disallows discovery where 'pertinent facts bearing on the question of jurisdiction are controverted . . . or where a more satisfactory showing of the facts is necessary.'"[47]

The court finds that ordering jurisdictional discovery here is improper because Nexio's sole basis for pursuing jurisdictional discovery is to ascertain whether SRS caused harm within the state of Utah.[48] The court accepts as true at this stage of the proceeding that Nexio suffered harm to the tune of $20 million in diverted funds.[49] But the fact that a Utah company suffered harm does not, by itself, mean that this court can exercise jurisdiction over SRS. Nexio fails to allege that SRS has any Utah-based contacts connected to this alleged harm, and Nexio fails to elucidate what discovery it would seek and how it might resolve its currently deficient factual showing. Thus, Nexio's justification for pursuing jurisdictional discovery would fail to remedy its deficiency. This is not a case where "a more satisfactory showing of the facts" would militate toward a conclusion that jurisdiction is proper; rather, there appears to be no legal or factual theory supporting SRS' minimum contacts and how they could connect to the litigation.

In any case, as SRS notes,[50] the authority Nexio relies on determined that jurisdictional discovery was appropriate because the jurisdictional question involved a complex, fact-intensive

---

[46] *Sizova v. Nat. Inst. of Standards & Tech.*, 282 F.3d 1320, 1326 (10th Cir. 2002) (citation omitted).

[47] *WebNX, Inc. v. Cummins Inc.*, No. 1:23-CV-00055-JNP-JCB, 2024 WL 4165736, *3 (D. Utah Sept. 12, 2024) (quoting *Dental Dynamics, LLC v. Jolly Dental Grp.*, 946 F.3d 1223, 1233 (10th Cir. 2020)).

[48] *Opposition* at 12–13.

[49] *Complaint* ¶ 53.

[50] *Reply* at 6.

stream of commerce theory of personal jurisdiction.[51]  Here, Nexio does not offer any explanation as to how discovery might solve what appears to be a prototypical jurisdictional question: whether SRS has minimum contacts in the forum state.  Instead, Nexio only argues that discovery will show that Nexio suffered harm, which the court already accepts as true for purposes of this Motion.  Thus, Nexio fails to provide any authority for its assertion that jurisdictional discovery is required here.

For the same reasons, the court declines to wait to rule on this issue until trial.  The merits of Nexio's claims are not intertwined with the issue of personal jurisdiction because the court accepts as true Nexio's contention that SRS caused harm in the state of Utah, and yet, there is no allegation that SRS Corporation expressly aimed any intentional action at or within the state of Utah.

## CONCLUSION

For the foregoing reasons, SRS's Motion to Dismiss is GRANTED.[52]  Accordingly, SRS's Motion to Stay is DENIED as moot.[53]

SO ORDERED this 10th day of December 2024.

BY THE COURT:

_____
ROBERT J. SHELBY
Chief United States District Judge

---

[51] *Opposition* at 12 (citing *WebNX, Inc.*, 2024 WL 4165736, at *3).

[52] Dkt. 35.

[53] Dkt. 24.