IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| COMPLETE MERCHANT SOLUTIONS, LLC, d.b.a, NEXIO, a Utah limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>SCOTT DAVIS, an individual, SARVEN CANIK, an individual, RAFFI KAYSERIAN, an individual, SRS CORPORATION, a California corporation, SECURE BC, LLC, d.b.a SECURE BANCARD, a Delaware limited liability company, and DOES I-X.<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT SECURE BANCARD'S MOTION TO DISMISS**<br><br>Case No. 2:24-cv-00789-RJS-DAO<br><br>Chief District Judge Robert J. Shelby<br><br>Magistrate Judge Daphne A. Oberg |

Now before the court is Defendant Secure BC, LLC's (Secure Bancard) Rule 12(b)(6) Motion to Dismiss.[1] For the reasons explained below, the court GRANTS the Motion.[2]

---

[1] Dkt. 33, *Defendant Secure BC, LLC's Motion to Dismiss* (*Motion to Dismiss*).

[2] Pursuant to DUCivR 7-1(g), the court finds oral argument is not necessary for this motion and will decide it on the papers.

## BACKGROUND

The court takes the following facts from Plaintiff Complete Merchant Solution LLC's (Nexio) Complaint[3] and related declarations and exhibits. At the motion to dismiss stage, the court accepts as true Nexio's well-pleaded factual allegations and views them in the light most favorable to Nexio.[4]

On October 18, 2024, Nexio filed this suit against Secure Bancard and four other defendants.[5] Nexio is a leading provider of global, tech-enabled payment routing and processing solutions.[6] Secure Bancard is a direct competitor.[7] Nexio sells its products and services primarily through its sales representative employees, who contact potential merchant customers and obtain signed customer contracts for Nexio's products and services.[8]

Defendants Scott Davis and Sarven Canik were formerly employed by Nexio as sales representatives.[9] Davis was employed from January 2012 until October 2024.[10] Canik was employed from September 2012 until June 2019.[11] Defendant Raffi Kayserian was formerly an independent contractor for Nexio, who first engaged with Nexio in March 2016.[12] Davis, Canik, and Kayserian entered into contracts with Nexio containing non-disclosure agreements, among

---

[3] Dkt. 2, *Complaint and Jury Demand* (*Complaint*).

[4] *See, e.g.*, *Beedle v. Wilson*, 422 F.3d 1059, 1063 (10th Cir. 2005).

[5] *Complaint*.

[6] *Id.* ¶ 13.

[7] *Id.* ¶ 41.

[8] *Id.* ¶ 14.

[9] *Id.* ¶¶ 19, 28; *see also* Dkt. 2-1, *Davis Employment Contract*; Dkt. 2-2, *Canik Employment Contract*.

[10] *Complaint* ¶¶ 19, 27.

[11] *Id.* ¶¶ 28–29.

[12] *Id.* ¶ 31.

other provisions.[13]  During their tenures with Nexio, Davis, Canik, and Kayserian were privy to Nexio's confidential information and trade secrets, including client lists and pricing schemes.[14] In September 2024, Nexio allegedly discovered that Davis, Canik, and Kayserian were diverting Nexio customers to Secure Bancard and to an entity formed by Kayserian.[15]

Nexio named Secure Bancard in five causes of action: aiding and abetting breach of the duty of loyalty, tortiously interfering with contractual relations, tortiously interfering with prospective economic advantage, and violations of the federal Defend Trade Secrets Act (DTSA) and the Utah Uniform Trade Secrets Act (UTSA).[16]  Presently before the court is Secure Bancard's Motion to Dismiss under Rule 12(b)(6).  This motion is fully briefed and ripe for review.[17]

## LEGAL STANDARD

A motion to dismiss for failure to state a claim tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true.[18]  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[19]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

---

[13] *See Davis Employment Contract* (containing non-competition, non-disparagement, and non-solicitation agreements); *Canik Employment Contract* (containing non-competition, non-disparagement, and non-solicitation agreements); Dkt. 2-3, *Kayserian Referral Agreement* (containing non-disparagement and exclusivity agreements).

[14] *Complaint* ¶¶ 44–45.

[15] *Id.* ¶¶ 41, 53.

[16] *Id.* ¶¶ 95–136.

[17] *Motion to Dismiss*; Dkt. 40, *Memorandum in Opposition to Secure BC, LLC's Motion to Dismiss* (*Opposition*); Dkt. 46, *Reply in Support of Motion to Dismiss* (*Reply*).

[18] Fed. R. Civ. P. 12(b)(6); *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994) (citing *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991)).

[19] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

liable for the misconduct alleged."[20]  This is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[21]  A complaint need not set forth detailed factual allegations, yet "[a] pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action'" is insufficient.[22]

## ANALYSIS

Secure Bancard seeks dismissal of Nexio's claims pursuant to Rule 12(b)(6).[23]  Specifically, Secure Bancard argues Nexio's claims for aiding and abetting the breach of the duty of loyalty and tortious interference are preempted by the UTSA, and that Nexio's trade secrets claims fail to state a claim.  The court agrees.

### I. Nexio's UTSA Claim Preempts its Claims for Aiding and Abetting the Breach of the Duty of Loyalty and Tortious Interference.

Secure Bancard first argues Nexio's UTSA claim is based on the same information underlying its other claims and they are therefore preempted.[24]  The UTSA "displaces conflicting tort, restitutionary, and other law of [Utah] providing civil remedies for misappropriation of a trade secret."[25]  In Utah, "a claim is preempted [by the UTSA] to the extent that it is based on factual allegations supporting a misappropriation of trade secrets or otherwise confidential information . . . ."[26]  If proof of a claim "would also simultaneously establish a claim for misappropriation of trade secrets, it is preempted irrespective [of] whatever surplus elements of

---

[20] *Iqbal*, 556 U.S. at 678.

[21] *Id.* at 679.

[22] *Id.* at 678 (quoting *Bell Atl. Corp.*, 550 U.S. at 555).

[23] *Motion to Dismiss*.

[24] *Id.* at 1, 4–5.

[25] Utah Code Ann. § 13-24-8.

[26] *CDC Restoration & Const., LC v. Tradesmen Contractors, LLC*, 274 P.3d 317 at 331 (Utah Ct. App. 2012).

proof were necessary to establish it."[27]  The court agrees Nexio's UTSA claim preempts its claims for Tortious Interference and Aiding and Abetting Breach of the Duty of Loyalty because the factual allegations underlying these claims would simultaneously establish a claim for misappropriation of trade secrets.

Nexio cites paragraphs 50, 61, and 97 of the Complaint to contend the aiding and abetting claim involves wrongful conduct that is distinct from the wrongful conduct underlying the trade secrets claim.[28]  However, Paragraph 50 states that Davis, Canik, and Keyserian "used Nexio's client lists to solicit clients for Secure Bancard with the intent to offer competing payment processing services that were identical to the services Nexio provides its clients."[29]  These are the same client lists that Nexio alleges constitute wrongfully appropriated trade secrets.[30]  Additionally, Paragraphs 61 and 97 together allege that Secure Bancard knew Davis, Canik, and Keyserian owed duties to Nexio and encouraged them to breach these duties to benefit Secure Bancard.[31]  Thus, these facts would establish a valid claim under the UTSA, which requires a plaintiff to demonstrate (1) the existence of a trade secret, (2) communication of the trade secret to [the defendant] under an express or implied agreement limiting disclosure of the secret, and (3) [the defendant's] use of the secret that injures [the plaintiff].[32]

Although Secure Bancard only raised it in passing, Nexio failed to explain why its tortious interference claims are also not preempted by the UTSA.  In any case, the factual allegations in the Complaint make plain that the tortious interference claims are based on the

---

[27] *Id.*

[28] *Opposition* at 7–8.

[29] *Complaint* ¶ 50.

[30] Dkt. 23, *Trade Secret Disclosure* ¶ 1; *Complaint* ¶¶ 122, 130.

[31] *Complaint* ¶¶ 61, 97.

[32] *Water & Energy Sys. Tech, Inc. v. Keil*, 974 P.2d 821, 822 (Utah 1999).

same factual allegations that would support a claim under the UTSA. Paragraph 133 of the Complaint states: "Defendants misappropriated Nexio's trade secrets without Nexio's authorization through the intentional and unauthorized use of Nexio's confidential and proprietary information and *through their encouragement and aiding of breaches of the confidentiality provisions in the Agreements*."[33] In other words, Nexio alleges Secure Bancard's misappropriation of trade secrets occurred *because* of its tortious interference with employment contracts and its involvement with Davis, Canik, and Kayserian's breaches of their duties owed to Nexio, including their duty to protect and not disclose Nexio's confidential information. Thus, the wrongful conduct underlying these claims cannot be separated, and the tortious interference and aiding and abetting claims are preempted by the UTSA.

Importantly, even if Nexio's claims for tortious interference are not preempted by the UTSA, Nexio would still fail to state a claim for the same reason that it failed to state a claim for misappropriation of trade secrets discussed in further detail below. Tortious interference requires (1) that the defendant intentionally interfere with the plaintiff's existing or potential economic relations (2) by improper means (3) causing injury to the plaintiff.[34] The absence of facts indicating any causal nexus or affirmative coordination between Secure Bancard and the actions of its independent contractors prevent this court from making any inference that Secure Bancard employed improper means to disrupt Nexio's business. Even if Nexio's conclusory statement about Secure Bancard's knowledge of Davis and Canik's employment at Nexio were accepted as

---

[33] *Complaint* ¶ 133.

[34] *See AH Aero Serv., LLC v. Heber City*, No. 2:17-CV-1118-TC, 2018 WL 2723883, at *9 (D. Utah June 6, 2018) (citing *Eldridge v. Johndrow*, 345 P.3d 553, 556 (Utah 2015)).

true,[35] it would not reasonably give rise to the inference that Secure Bancard employed improper means in engaging their services or directing them to breach their employment contracts.

## II. Nexio Fails to State a Claim under the UTSA or DTSA.

The UTSA requires a plaintiff to demonstrate (1) the existence of a trade secret, (2) communication of the trade secret to [the defendant] under an express or implied agreement limiting disclosure of the secret, and (3) [the defendant's] use of the secret that injures [the plaintiff].[36] Similarly, a plaintiff asserting a claim for misappropriation of trade secrets under the DTSA must establish: (1) the existence of a trade secret that relates to a product or service used in, or intended for use in, interstate or foreign commerce; (2) the acquisition of the trade secret, or the use or disclosure of the trade secret without consent; and (3) the person acquiring, using, or disclosing the trade secret knew or had reason to know that the trade secret was acquired by improper means.[37]

Nexio fails to plead facts sufficient to give rise to a reasonable inference that Secure Bancard acquired or used any of Nexio's trade secrets, let alone that Secure Bancard knew or had reason to know the trade secrets were acquired by improper means. Instead, the allegations show only how Secure Bancard paid commissions to three individuals that had access to Nexio's trade secrets.[38] Nexio states in conclusory fashion, and without factual support, that Secure Bancard was aware that Davis and Canik were Nexio employees who owed common-law obligations to

---

[35] *Complaint* ¶ 61.

[36] *Keil*, 974 P.2d at 822.

[37] *Total Quality Sys., Inc. v. Universal Synaptics Corp.*, 679 F. Supp. 3d 1196, 1210 (D. Utah 2023) (citation omitted).

[38] *Complaint* ¶¶ 42–45.

7

Nexio.[39] However, even accepting this conclusory allegation as true, the fact that Secure Bancard engaged two individuals they knew to be employed elsewhere does not give rise to a reasonable inference that Secure Bancard misappropriated trade secrets. Essentially, Nexio asks this court to infer that Secure Bancard both knew Davis, Canik, and Kayserian were agents of Nexio and knew and/or encouraged Davis, Canik, and Kayserian to use Nexio trade secrets to its benefit. The Complaint lacks specific factual allegations giving rise to such inferences.

Instead, the only allegations Nexio offers purporting to connect Secure Bancard to the misappropriation of trade secrets are entirely conclusory:

> Defendants misappropriated Nexio's trade secrets without Nexio's authorization through the intentional and unauthorized use of Nexio's confidential and proprietary information and through their encouragement and aiding of breaches of the confidentiality provisions in the Agreements.[40]
>
> Defendants' misappropriation of the trade secrets caused Nexio to suffer damages relating to lost profits, goodwill, employees, and prospective income in an amount to be proven at trial.[41]

As Secure Bancard points out, these allegations are conclusory and need not be accepted as true at the Motion to Dismiss stage.[42] Without more specific facts, the court cannot find Nexio stated a claim against Secure Bancard for violations of the DTSA or UTSA.

---

[39] *Id.* ¶ 61 ("Upon information and belief, Secure Bancard was aware of Davis's and Canik's employment relationship and Kayserian's contractual relationship with Nexio, but Secure Bancard knowingly disregarded Davis's, Canik's, and Kayserian's contractual obligations to Nexio."); *see also Opposition* at 8.

[40] *Complaint* ¶¶ 125, 133.

[41] *Id.* ¶¶ 134.

[42] *Motion to Dismiss* at 1, 4, 9.

## CONCLUSION

For the foregoing reasons, Secure Bancard's Motion to Dismiss is GRANTED.[43]

SO ORDERED this 10th day of December 2024.

BY THE COURT:

_____
ROBERT J. SHELBY
Chief United States District Judge

---

[43] Dkt. 33.