IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| COMPLETE MERCHANT SOLUTIONS, LLC, d.b.a, NEXIO, a Utah limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>SCOTT DAVIS, an individual, SARVEN CANIK, an individual, and SECURE BC, LLC, d.b.a SECURE BANCARD, a Delaware limited liability company,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART DEFENDANT SECURE BANCARD'S MOTION TO DISMISS**<br><br>Case No. 2:24-cv-00789-RJS-DAO<br><br>Chief District Judge Robert J. Shelby<br><br>Magistrate Judge Daphne A. Oberg |

Now before the court is Defendant Secure BC, LLC's (Secure Bancard) Rule 12(b)(6) Motion to Dismiss.[1]  For the reasons explained below, the court GRANTS IN PART and DENIES IN PART the Motion.[2]

## BACKGROUND

The court takes the following facts from Plaintiff Complete Merchant Solution LLC's (Nexio) Amended Complaint.[3]  At the motion to dismiss stage, the court accepts as true Nexio's well-pleaded factual allegations and views them in the light most favorable to Nexio.[4]

On October 18, 2024, Nexio filed this suit against Secure Bancard and four other defendants.[5]  Nexio is a leading provider of global, tech-enabled payment routing and processing

---

[1] Dkt. 63, *Secure Bancard's Second Motion to Dismiss* (*Motion*).

[2] Pursuant to DUCivR 7-1(g), the court finds oral argument is not necessary.

[3] Dkt. 62, *First Amended Complaint and Jury Demand* (*Amended Complaint*).

[4] *See, e.g.*, *Beedle v. Wilson*, 422 F.3d 1059, 1063 (10th Cir. 2005).

[5] Dkt. 2, *Complaint and Jury Demand*.

solutions.[6]  Secure Bancard is a direct competitor.[7]  Nexio sells its products and services primarily through its sales representative employees, who contact potential merchant customers and obtain signed customer contracts for Nexio's products and services.[8]

Defendants Scott Davis and Sarven Canik were formerly employed by Nexio as sales representatives.[9]  Davis was employed from January 2012 until October 2024.[10]  Canik was employed from September 2012 until June 2019.[11]  Raffi Kayserian was formerly an independent contractor, who first engaged with Nexio in March 2016.[12]  Davis, Canik, and Kayserian entered into contracts with Nexio containing non-disclosure agreements, among other restrictive provisions.[13]  During their tenures with Nexio, Davis, Canik, and Kayserian were privy to Nexio's confidential information and trade secrets, including client lists and pricing schemes.[14]

In September 2024, Nexio allegedly discovered that Davis, Canik, and Kayserian had been diverting Nexio customers to Secure Bancard and funneling commissions to an entity formed by Kayserian called SRS Corporation.[15]  Nexio alleges Davis, Canik, and Kayserian have diverted approximately $20 million in revenue away from Nexio while acting as Secure

---

[6] *Amended Complaint* ¶ 13.

[7] *Id.* ¶¶ 38, 65, 81.

[8] *Id.* ¶ 11.

[9] *Id.* ¶¶ 16, 25; *see also* Dkt. 62-1, *Davis Employment Contract*; Dkt. 62-2, *Canik Employment Contract*.

[10] *Amended Complaint* ¶¶ 16, 24.

[11] *Id.* ¶¶ 25–26.

[12] *Id.* ¶ 28.  Kayserian was dismissed from this lawsuit in December 2024.  Dkt. 55, *Docket Text Order*.

[13] *Id.* ¶¶ 16–22, 25–25, 28–34; *see also*, *Davis Employment Contract* (containing non-disclosure, non-competition, non-disparagement, and non-solicitation agreements); *Canik Employment Contract* (containing non-disclosure, non-competition, non-disparagement, and non-solicitation agreements); Dkt. 63-3, *Kayserian Referral Agreement* (containing non-disclosure, non-disparagement, non-solicitation, and exclusivity agreements).

[14] *Amended Complaint* ¶¶ 44, 47–48, 51–53.

[15] *Id.* ¶¶ 38–39, 42, 45, 61–63, 68(b).

Bancard's agents.[16]  Nexio alleges Secure Bancard was aware Davis, Canik, and Keyserian were subject to confidentiality agreements with Nexio and aware that they used Nexio's confidential information while diverting customers from Nexio to Secure Bancard.[17]  Nexio alleges Secure Bancard sent monthly "Residual Reports" to Kayserian detailing the commissions to be paid to SRS Corporation.[18]  Kayserian then forwarded these Reports to Davis and Canik, who responded with excel tables detailing the amount of commissions due individually to each of them.[19]  In its Amended Complaint, Nexio brings four claims against Secure Bancard: tortious interference with contractual relations; tortious interference with prospective economic advantage; violation of the Utah Uniform Trade Secrets Act (UTSA); and violation of the federal Defend Trade Secrets Act (DTSA).[20]

    The court previously dismissed Raffi Kayserian and SRS Corporation from this suit.[21] The court also stayed the action as to Davis and Canik while the parties arbitrate Nexio's claims.[22]  On December 10, 2024, this court granted Secure Bancard's first Motion to Dismiss for failure to state a claim based on Nexio's original Complaint.[23]  Nexio filed its Amended

---

[16] *Id.* ¶¶ 58–63.

[17] *Id.* ¶¶ 40, 56.

[18] *Id.* ¶ 68.

[19] *Id.*

[20] *Id.* ¶¶ 116–49.

[21] *See* Dkt. 55, *Docket Text Order*; Dkt. 51, *Memorandum Decision and Order Granting Defendant SRS Corporation's Motion to Dismiss*.

[22] Dkt. 36, *Order Granting Joint Motion to Stay by Plaintiff and Defendants Scott Davis and Sarven Canik to Stay Action (Doc. No. 31)*.

[23] Dkt. 52, *Memorandum Decision and Order Granting Secure Bancard's Motion to Dismiss*.

Complaint on January 27, 2025,[24] and Secure Bancard filed the present Motion to Dismiss two weeks later.[25]  The Motion is fully briefed and ripe for review.[26]

## LEGAL STANDARD

A motion to dismiss for failure to state a claim "tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."[27]  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[28]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[29]  This is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[30]  A complaint need not set forth detailed factual allegations, yet "[a] pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action'" is insufficient.[31]

## ANALYSIS

Secure Bancard seeks dismissal of Nexio's claims pursuant to Rule 12(b)(6).[32] Specifically, Secure Bancard argues Nexio's claims rest on "perfunctory and conclusory

---

[24] *Amended Complaint*.

[25] *Motion*.

[26] Dkt. 66, *Memorandum in Opposition to Secure Bancard's Second Motion to Dismiss* (*Opposition*); Dkt. 69, *Reply in Support of Second Motion to Dismiss* (*Reply*).

[27] Fed. R. Civ. P. 12(b)(6); *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994) (citing *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991)).

[28] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[29] *Iqbal*, 556 U.S. at 678.

[30] *Id.* at 679.

[31] *Id.* at 678 (quoting *Bell Atl. Corp.*, 550 U.S. at 555).

[32] *Motion*.

allegations tying Secure Bancard to Davis, Canik, and Kayserian."[33]  It also contends Nexio's claims against Secure Bancard for tortious interference are preempted by the UTSA because they are predicated on the alleged misuse of trade secrets.[34]  Nexio, on the other hand, believes the alleged agency relationship between Secure Bancard and Davis, Canik, and Kayserian, combined with Secure Bancard's alleged knowledge of Davis, Canik, and Kayserian's ongoing duties they owed to Nexio, "easily meet the plausibility pleading requirement with respect to Nexio's claims for tortious interference and misappropriation of trade secrets."[35]

The court agrees in part with Secure Bancard.  Nexio fails to state a vicarious liability claim for tortious interference against Secure Bancard because it offers no facts beyond legal conclusions establishing an agency relationship between Secure Bancard and Davis, Canik, and Kayserian, nor does Nexio offer any allegations purporting to show that Davis, Canik, and Kayserian's allegedly tortious conduct was within the scope of that relationship.  However, the court finds Nexio has stated a claim against Secure Bancard for misappropriation of trade secrets under the DTSA and UTSA because it is not specifically predicated on any agency relationship: Nexio alleges Secure Bancard knew Davis, Canik, and Kayserian employed confidential trade secrets while diverting customers to it.

## I.    Tortious Interference Claims

To state a claim for intentional interference with economic relations or prospective economic advantage a plaintiff must prove the following elements: "(1) that the defendant intentionally interfered with the plaintiff's existing or potential economic relations, (2) by

---

[33] *Id.* at 3.

[34] *Id*. at 2.

[35] *Opposition* at 2.

improper means, [] and (3) causing injury to the plaintiff."[36]  Furthermore, in Utah, "an employer may be held vicariously liable for the acts of its employee if the employee is acting in the course and scope of his employment at the time of the act giving rise to the injury."[37]  And to determine whether an employee is in the course and scope of his employment, Utah courts apply a three-part test: 1) whether an employee's conduct must be of the general kind the employee is employed to perform; 2) the employee's conduct must occur within the hours of the employee's work and the ordinary spatial boundaries of the employment; and 3) the employee's conduct must be motivated, at least in part, by the purpose of serving the employer's interest.[38]

Nexio's Amended Complaint adds several new allegations asserting that Davis, Canik, and Kayserian were acting as Secure Bancard's agents when they violated their employment contracts, used Nexio's trade secrets, and interfered with Nexio's communications with its customers.[39]  Nexio contends that—by asserting an agency relationship between Secure Bancard and Davis, Canik, and Kayserian—it effectively stated a vicarious liability claim for tortious interference against Secure Bancard.[40]

The court is unconvinced.  Nexio does not specifically assert vicarious liability in its Amended Complaint as the basis for any of Nexio's claims against Secure Bancard.[41]  Instead, Nexio asserts a vicarious liability theory in support of its tortious interference claim against Secure Bancard for the first time in its Opposition to Secure Bancard's Motion to Dismiss.[42]  But

---

[36] *See AH Aero Serv., LLC v. Heber City*, No. 2:17-cv-1118-TC, 2018 WL 2723883, at *9 (D. Utah June 6, 2018) (citing *Eldridge v. Johndrow*, 345 P.3d 553, 556 (Utah 2015)).

[37] *See Christensen v. Swenson,* 874 P.2d 125, 127 (Utah 1994).

[38]  *Clover v. Snowbird Ski Resort*, 808 P.2d 1037, 1040 (Utah 1991).

[39] *Amended Complaint* ¶¶ 39, 50, 56, 58, 60, 68, 103, 119–20, 127–28, 137, 139, 145, 147.

[40] *Opposition* at 8–10.

[41] *See generally*, *Amended Complaint*.

[42] *Opposition* at 8–9.

even accepting that Secure Bancard intended to assert a vicarious liability claim, and further

accepting Davis, Canik, and Kayserian were Secure Bancard's agents in some capacity, the

Amended Complaint does not include any allegations concerning the scope or nature of any of

the alleged agency relationships.  Instead, the Amended Complaint formulaically recites that

Davis, Canik, and Kayserian were acting as Secure Bancard agents when they tortiously

interfered with Nexio by disseminating disparaging falsehoods.[43]  But this is a legal conclusion,

unsupported by factual reference, that this court is not required to accept as true.[44]  As Secure

Bancard points out, "[t]he Amended Complaint does not identify how Davis, Canik, and

Kayserian's [conduct was] authorized or ratified by Secure Bancard."[45]

Moreover, while the Amended Complaint offers some factual support as to the existence

of some form of agency relationship between Kayserian and Secure Bancard,[46] the foundation of

the alleged agency relationship between Secure Bancard and Davis and Canik is much thinner.[47]

Beyond repeatedly labeling them as "agents," Nexio provides no facts suggesting that Secure

Bancard had a formal business relationship with Davis and Canik whatsoever.[48]  Thus, Nexio's

attempt to impute Davis and Canik's tortious conduct to Secure Bancard is particularly deficient.

---

[43] *Amended Complaint* ¶¶ 58–60; *Opposition* at 8–9.

[44] *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp.*, 550 U.S. at 555).

[45] *Reply* at 7.

[46] Secure Bancard admits it engaged Kayserian as an independent contractor.  *See Opposition* at 3.  This is reflected in the Amended Complaint given Secure Bancard's business-related communications with Kayserian (and only Kayserian).  *Amended Complaint* ¶ 68.

[47] Although unclear, the Amended Complaint appears to suggest that Secure Bancard paid all commissions to SRS Corporation and communicated only with Kayserian.  Only after Kayserian received such communications did Davis—independent from any involvement with Secure Bancard—determine the commissions due to him, Canik, and Kayserian individually. *See Amended Complaint* ¶¶ 68–69.

[48] Secure Bancard's alleged knowledge of Davis and Canik's use of trade secrets for its benefit, while relevant to Nexio's trade secrets claim, does little to establish any sort of agency relationship between them and Secure Bancard.

But even as to Kayserian, the Amended Complaint is devoid of any factual allegations regarding the scope of Kayserian's duties, nor does it offer any non-conclusory facts suggesting that Kayserian's complained-of conduct was within the scope of those duties or that his conduct was otherwise ratified or authorized by Secure Bancard.[49] Additionally, because Nexio stipulated to dismiss Kayserian from this suit,[50] it is unclear whether Kayserian stands accused of committing any tort, and in turn unclear whether this court can impute Kayserian's conduct to Secure Bancard. Beyond that, it cannot be that an employer is imputed with ratification of its employee's tortious conduct solely by virtue of an asserted agency relationship, the scope of which is unalleged and unexplained, because the court cannot ascertain whether the allegedly tortious conduct falls within that scope.[51] And this is especially true regarding Davis and Canik's conduct because the asserted agency relationship as to them lacks meaningful factual foundation in the first place. Accordingly, the court cannot find that Nexio stated vicarious liability claims for tortious interference against Secure Bancard.

## II.    Misappropriation of Trade Secrets

To state a claim for misappropriation of trade secrets, the elements under the DTSA and UTSA closely resemble each other. A plaintiff must show: "(1) the existence of a trade secret;

---

[49] Nexio's allegation that Secure Bancard "was aware" that Kayserian was beholden to contractual obligations with Nexio and knew Kayserian was diverting Nexio's customers to it, *see Amended Complaint* ¶ 40, does not suggest Secure Bancard ratified the disparaging falsehoods he allegedly disseminated, which is the basis of Nexio's tortious interference claim. *See id*. ¶¶ 56–60; *Opposition* at 2, 8–9. Nowhere does Nexio allege that Secure Bancard authorized, ratified, or was aware of the disparaging falsehoods. In fact, the Amended Complaint states that Kayserian, together with Davis and Canik, developed the strategy that forms the basis of Nexio's tortious interference claim. *See Amended Complaint* ¶ 58. The allegation that Nexio adds that Davis, Canik, and Kayserian did so "as agents," without more, is insufficient to plausibly state a claim for vicarious liability.

[50] Dkt. 54, *Stipulated Motion to Dismiss Defendant Raffi Kayserian*.

[51] It is well established that formulaically alleging that the elements of a claim are met is insufficient, including in the vicarious liability context. *See Schriner v. Gerard*, No. 23-cv-206-TDD, Slip Copy, 2024 WL 3802479, at * 5 (W.D. Okla. Aug. 13, 2024) ("Upon examination of the Complaint, it contains insufficient factual allegations to state a plausible vicarious-liability claim based on a principal-agent theory. . . . Plaintiff's allegations related to his principal-agent theory are limited to [asserting defendant-employer exercised control over defendant-employee.]").

(2) the acquisition, use, or disclosure of the trade secret without consent; and (3) that the individual acquiring, using, or disclosing the trade secret knew or should have known the trade secret was acquired by improper means."[52]

Secure Bancard contends Nexio's conclusory allegations labeling Davis, Canik, and Kayserian as Secure Bancard agents improperly "impute[] guilt" to Secure Bancard for Nexio's claims for misappropriation of trade secrets.[53] Relying on a case from the District of Colorado, Secure Bancard argues it cannot be liable for misappropriation of trade secrets because Nexio did not demonstrate that any Secure Bancard officer had "some form of participation in the tort" or allege that any Secure Bancard officer "directed, controlled, approved, or ratified decision to acquire, disclose, or use [plaintiff's] trade secrets without consent . . . ."[54]

The court disagrees. It is neither here nor there whether Davis, Canik, and Kayserian formally acted as Secure Bancard's agents when they allegedly misappropriated trade secrets because Nexio alleges Secure Bancard was aware of their scheme, knew that the trade secrets were improperly acquired, and knew that the trade secrets were being used for its own benefit, including by undercutting Nexio's customer and pricing margins.[55] After all, Nexio does not appear to assert a vicarious liability theory for its claims under the DTSA and UTSA.[56]

---

[52] *John Bean Techs. Corp. v. B GSE Grp., LLC*, 480 F. Supp. 3d 1274, 1302 (D. Utah 2020); *id.* at 1296 ("To establish a misappropriation claim under the UTSA, [a plaintiff] must show 'two essential elements: (1) existence of a protectable 'trade secret' of a plaintiff and (2) demonstration of 'misappropriation' by a defendant.") (citing *InnoSys., Inc. v. Mercer*, 364 P.3d 1013, 1018 (Utah 2015)).

[53] *Motion* at 11.

[54] *Opposition* at 11–12 (citing *DTC Energy Grp., Inc. v. Hirschfeld*, 420 F. Supp. 3d 1163 at 1176–77 (D. Colo. 2019)).

[55] *Amended Complaint* ¶¶ 40, 50, 56, 73. Nexio pleads these allegations on information and belief, but the plausibility standard "does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible." *See Aaag-California, LLC v. Kisana*, No. 2:20-cv-00026-HCN-JCB, 2020 WL 2849929, at *2 (D. Utah June 2, 2020). What exactly Secure Bancard knew and when is within its control and is best gleaned through discovery.

[56] *Cf. Opposition* at 7–8 (asserting a vicarious liability theory under its tortious interference discussion).

Furthermore, the case Secure Bancard relies on to suggest Nexio failed to show it had "some sort of participation" in the alleged misappropriation only concerned when an *officer* of a corporation can be held liable for misappropriation of trade secrets.[57]  Applying the "responsible corporate officer doctrine," the court found that two Defendant-officers could not be held liable because there were insufficient facts demonstrating they personally participated in the tort.[58]  Here, Nexio has not named any Secure Bancard officers as defendants.  Moreover, in that same case, the court found that an officer-Defendant sufficiently participated in the misappropriation of trade secrets in part because the officer "knew or had a reason to know" the trade secrets he benefited from were initially acquired by individuals who were violating their duties of loyalty to another entity.[59]  Although more was alleged against the defendant in that case, Nexio here further alleges Secure Bancard "knew or had reason to know" Davis, Canik, and Kayserian used Nexio's trade secrets—in violation of their duties of loyalty—to benefit Secure Bancard.[60]

Reading the Amended Complaint as a whole, the court finds Nexio adequately pleaded claims for misappropriation of trade secrets under the UTSA and DTSA.  Nexio alleges that its customer lists and pricing information is confidential information not known to the public, not readily ascertainable, and the object of strict confidentiality and protection policies.[61]  Nexio also alleges that Davis, Canik, and Kayserian improperly used Nexio's customer lists and pricing schemes to "undercut" Nexio's sales and divert customers to Secure Bancard.[62]  And critically, Nexio adds to its Amended Complaint a new allegation that Nexio was "aware" that Davis,

---

[57] *Hirschfeld*, 420 F. Supp. 3d at 1176–77.

[58] *Id*.

[59] *Id*. at 1177–78.

[60] *Amended Complaint* ¶¶ 40, 56, 73.

[61] *Id*. ¶¶ 45, 50–54.

[62] *Id*. ¶ 50.

Canik, and Kayserian were using Nexio's confidential information to divert Nexio customers to Secure Bancard, despite their contractual obligations to Nexio forbidding such use.[63]  Combined with the fact that Nexio's sales precipitously declined during the period of alleged wrongdoing,[64] and given Secure Bancard is Nexio's direct competitor who paid significant sums in commissions to at least one individual who Nexio alleges Secure Bancard knew was contractually bound to Nexio,[65] the court finds Nexio stated plausible claims against Secure Bancard for misappropriation of trade secrets under the DTSA and UTSA.

## CONCLUSION

For the foregoing reasons, Secure Bancard's Motion to Dismiss is GRANTED IN PART.[66]  Nexio's claims for tortious interference against Secure Bancard are DISMISSED without prejudice.

SO ORDERED this 15th day of May 2025.

BY THE COURT:

_____
ROBERT J. SHELBY
Chief United States District Judge

---

[63] *Id*. ¶ 56; *cf. Complaint and Jury Demand* ¶ 58 (stating only that Secure Bancard benefitted from the confidential information being used by Davis, Canik, and Kayserian, not that it was aware the three individuals were using confidential information to do so).

[64] *Amended Complaint* ¶ 37.

[65] *Id*. ¶¶ 38, 40, 65, 68, 81.

[66] Dkt. 63.